## COURT OF APPEALS,

### June 12, 1908.

# THE PEOPLE v. ANGELO LAUDIERO.

#### (192 N. Y. 304.)

(1.) MURDER—SUFFICENCY OF EVIDENCE TO WARRANT CONVICTION.

The evidence upon the trial of a defendant indicted for murder in the first degree examined, and *held*, to warrant the submission of the question of defendant's guilt to the jury, and to fully sustain a verdict of conviction.

(2.) REQUEST TO CHARGE—WHEN PROPERLY REFUSED. A request to charge that "if there is in the mind of the jury a reasonable doubt as to the truth or untruth of any testimony on the part of the people such doubt must be resolved in favor of the defendant by the rejection of such testimony," was too broad and was properly refused, where the court had already fully and correctly instructed the jury with reference to their duty, if they had a reasonable doubt as to any of the essential facts necessary to establish the guilt of the defendant and had further charged, in answer to the request, that in case any witness had wilfully testified falsely as to any material fact they might disregard his entire testimony.

(3). EVIDENCE—TESTIMONY AS TO GOOD CHARACTER—PROPER TO SHOW ON CROSS–EXAMINATION WHAT WITNESS HAD HEARD AS TO DEFENDANT'S CHARACTER.

Where a witness is called by the defendant for the purpose of establishing his previous good character, and she has testified that she knew his reputation for peace and quiet, that it was good and that he always was a good man, it is entirely proper on cross-examination to show by the witness what she had heard with reference to his character, upon which she based her judgment that he was a good and peaceable man.

(4.) ERRONEOUS EXCLUSION OF TESTIMONY OF DEFENDANT AS TO WHETHER HE HAD BEEN CONVICTED OF CRIME—WHEN ERROR WILL BE DISREGARDED.

Where the defendant on a trial for murder is called as a witness on his own behalf, the exclusion of answers to questions put to him by his counsel as to whether he had ever been convicted of crime is erroneous, since it was perfectly competent for his counsel to inquire briefly into his past history in order to enable the jurors to determine the extent to which they should give credit to his testimony; and, if there had been testimony given reflecting upon his character, it was also proper for him to explain or deny it; but where it appears that the exclusion of 'the

evidence did not materially injure or prejudice the defendant's case, the error will be disregarded under the provisions of section 542 of the Code of Civil Procedure.

(5.) REQUESTS TO CHARGE—WHEN COURT JUSTIFIED IN ASSUMING THAT COUNSEL HAD RAISED ALL QUESTIONS HE DESIRED RULINGS UPON.

Where it is claimed by counsel for defendant that during the summing up he handed to the trial judge certain written requests to charge, which are printed in the case on appeal, but the judge states that he had no recollection of receiving the requests, and consequently did not make rulings with reference thereto, and it appears that at the conclusion of the charge the defendant's counsel read some of the requests and asked the court to specifically charge them, but asked for no rulings with reference to the rest, and took no exception to the neglect of the court to charge them, such failure to ask for rulings, upon the requests not charged, justified the court in assuming that the defendant's counsel had raised all of the questions that he desired to upon the trial, it being the duty of the counsel, under the circumstances, to ask for rulings upon the other requests if he desired to raise any question with reference thereto.

(6.) NEW TRIAL PROPERLY DENIED.

Certain alleged newly-discovered evidence submitted upon a motion for a new trial examined, and *held,* that the motion was properly denied.

(Argued May 25, 1908; decided June 12, 1908.)

APPEAL from a judgment of the Court of General Sessions of the Peace in the county of New York, rendered June 26, 1907, upon a verdict convicting defendant of the crime of murder in the first degree, and from orders denying motions in arrest of judgment and for a new trial.

The facts, so far as material, are stated in the opinion.

*Charles E. Le Barbier* and *Frederick H. Stillwagen* for appellant. It was reversible error for the trial court to permit the district attorney, upon his cross-examination of a witness as to the defendant's character for peace and quiet, to inquire as to alleged particular acts of the defendant's bad conduct. (Wigmore on Ev. [1904] § 988; *Gordon* v. *State,* 3 Iowa 410; *State* v. *Sterrill,* 71 Iowa 386; *Moulton* v. *State,* 88 Ala. 116;

*People* v. *Elliott,* 163 N. Y. 11; *People* v. *Molineux,* 168 N. Y. 264; *People* v. *Ray,* 36 App. Div. 389; *People* v. *De Garmo,* 179 N. Y. 135; *People* v. *Dorthy,* 156 N. Y. 237.)  The trial court erred in refusing to charge as requested in respect to the weight which may attach to the evidence of the defendant as to good character.  (*People* v. *Bonier,* 179 N. Y. 317; *People* v. *Remsen,* 43 N. Y. 6; *People* v. *Seldner,* 62 App. Div. 357; *People* v. *Goldberg,* 20 App. Div. 444.)

*William Travers Jerome, District Attorney (Robert C. Taylor* of counsel), for respondent.  The denial of a motion for a new trial for alleged newly-discovered evidence was proper. (*Greenfield* v. *People,* 85 N. Y. 75; *People* v. *Shea,* 16 Misc. Rep. 111; *People* v. *Mayhew,* 19 Misc. Rep. 313; *People* v. *Buchanan,* 145 N. Y. 1; *People* v. *Koepping,* 178 N. Y. 247; *People* v. *Patrick,* 182 N. Y. 131.)  No error was committed in the cross-examination of the witness Tucillo.  (*People* v. *Irving,* 95 N. Y. 543; *People* v. *Cole,* 43 N. Y. 508; *Carpenter* v. *Blake,* 10 Hun, 358; *People* v. *Jeffrey,* 82 Hun, 409; *People* v. *Elliott,* 163 N. Y. 11; *Annis* v. *People,* 13 Mich. 517; *People* v. *Webster,* 139 N. Y. 73; *People* v. *Osmond,* 138 N. Y. 80; *People* v. *Conroy,* 153 N. Y. 186; *People* v. *Van Gaasbeck,* 189 N. Y. 408.)  The questions as to whether the defendant had ever been convicted of crime in this country or in Italy were properly excluded.  (*People* v. *Van Gaasbeck,* 189 N. Y. 408; *People* v. *Wenzel,* 189 N. Y. 286; *People* v. *Cascone,* 185 N. Y. 332.)  The alleged refusals to charge as to good character present no error.  (*People* v. *Rodowald,* 177 N. Y. 428; *People* v. *Glen,* 173 N. Y. 400; *People* v. *Pallister,* 138 N. Y. 601; *People* v. *Tobin,* 176 N. Y. 278, 288; *People* v. *Boggiano,* 179 N. Y. 267.)

HAIGHT, J.  The defendant, Angelo Laudiero, has been convicted of the crime of murder in the first degree.  The evidence

on the part of the People tended to show that on the 14th day of December, 1906, about a quarter before five o'clock in the afternoon Michael D'Ambro was standing on Hester street in the city of New York in front of the bank of L. Scinto, near the grocery store adjoining of Domenico Pagano, talking with Frederick Balsamo, Antonio Mangrello and the keeper of the grocery store. While so engaged the defendant crossed the street in front of a span of horses standing opposite, approached D'Ambro from behind and either grabbed him by the throat or collar; or struck him with his right hand and at the same instant shot him with a revolver which he held in his left hand, the bullet entering the temple a short distance in front of and above the ear, from which wound D'Ambro shortly thereafter died. It also appeared that as D'Ambro fell to the walk upon receiving the bullet the defendant fired at him again and then, after a short interval, turned his revolver toward Mangrello, firing at him several times and that Mangrello pulled his revolver from his pocket and returned the fire of the defendant, wounding him in the leg. The eye-witnesses substantially agree with reference to the shooting of D'Ambro by the defendant. The four persons mentioned were standing together talking, and consequently occupied different positions upon the sidewalk and naturally some of the witnesses saw the defendant approach D'Ambro while the others did not see him until the first shot was fired. They all agree that the defendant held his revolver in his left hand at the time of firing; that at first there were two shots fired, then after a short interval there were five or six more shots fired. There was evidence to the effect that about a year before the defendant had had a quarrel with Mangrello, who had struck him, and that the decedent, D'Ambro, had interfered and prevented the defendant from getting revenge at that time, and that about a month before the homicide in question the latter had, in conversation with one Di Rosa, referred to the quarrel and said that the time had not yet passed for him to vindicate himself. The

defendant was sworn in his own behalf and testified in substance that he was passing along Hester street at the time alluded to and as he approached the grocery store Mangrello turned around and said, " Here comes that snot "; that the defendant then answered, " Why am I a snot ? " and at that Mangrello pulled a revolver, shot and wounded him in the leg; that then the defendant pulled his revolver and fired it once; that he did not see D'Ambro and did not shoot him.

The evidence was of such a character that it became the duty of the court to submit the question of the defendant's guilt to the jury, and in our judgment it fully sustains the verdict rendered.

After the court had concluded its charge the defendant's counsel asked that the jury be further instructed to the effect that " If there is in the mind of the jury a reasonable doubt as to the truth or untruth of any testimony on the part of the people such doubt must be resolved in favor of the defendant by the rejection of such testimony." The court declined to charge in the language of the request, but stated: " If you believe that any witness has wilfully testified falsely to any material fact you are authorized, but not bound, to disregard the entire testimony of the witness. Of course, where you disregard the testimony of any particular witness it must necessarily follow that it results to the benefit of the accused." The court had already fully and correctly instructed the jury with reference to their duty in case they had a reasonable doubt as to any of the essential facts necessary to establish the guilt of the defendant and in case they had a reasonable doubt with reference to any such facts being established by the testimony, the defendant was to be given the benefit of such doubt. The court also, as we have seen, in answer to the request further charged the jury that in case any witness had wilfully testified falsely to any material fact they might disregard his entire testimony. It is thus apparent to our minds that the jurors were fully instructed upon the sub-

ject and that the defendant has no cause for complaint. The request was too broad to be entitled to be charged in the specific language of the defendant's counsel. It was to the effect that, if there was a reasonable doubt as to the truth or untruth of *any* testimony the doubt must be resolved in favor of the defendant by the rejection of such testimony. A witness may be honestly mistaken with reference to some minor detail of a transaction which does not affect the essential facts by which the various elements constituting a crime are established. It does not, therefore, follow that the entire testimony of a witness should be rejected, by reason of an honest mistake with reference to some minor detail, but that the testimony only, with reference to which the witness was mistaken, should be rejected. (See *People* v. *Bonifacio,* 190 N. Y. 150, 21 N. Y. Crim. 122, and authorities there cited.)

During the trial Assunta Tucillo was sworn as a witness for the defendant, and testified that she had known the defendant for a long time; that they grew up together and she knew his reputation for peace and quiet, and that it was good, he always was a good man and always told the truth. On the cross-examination by the district attorney she was asked if she had heard that the defendant had shot anybody since he had been in America and also to tell the jury how many persons she had heard that he had shot. The witness answered about three or four. She then gave the names of two, but did not recollect the names of the others. She also testified that the defendant was in prison once for fighting while living in Italy. She then concluded her testimony by stating that she still considered him a good man. We think no error occurred in the rulings of the court with reference to the testimony of this witness. She was called by the defendant for the purpose of establishing his previous good character. This depended upon his reputation in the community in which he lived. (2 Wigmore on Evidence, § 988.) It, therefore, became entirely proper on cross-exami-

27

nation to show by the witness what she had heard with reference to his character, upon which she based her judgment that he was a good and peaceable man.

During the examination of the defendant he was asked if he had ever been convicted of crime in this country and as to whether he had ever been convicted of crime in Italy. Objections were interposed to these questions by the district attorney and the evidence was excluded by the court, the defendant taking exceptions. We shall not attempt to justify the rulings of the court excluding the defendant's answer to these questions. It was perfectly competent for the defendant's counsel to inquire briefly into his client's past history, in order to enable the jurors to determine the extent to which they should give credit to his testimony, and if there had been testimony given reflecting upon his character it was also proper for him to explain or deny it. It has already appeared from the testimony of his witness Tucillo that it had been reported that he had shot three or four persons since he became a resident of America and that he was once in prison for fighting in Italy before his removal to this country. He was not asked as to whether he had ever shot other persons or as to whether he had been in prison in Italy, but was asked the questions as to whether he had been convicted of crime in this country or in Italy. There was nothing in the testimony of Tucillo that indicated that defendant had been convicted of shooting persons either in this country or in Italy. The fact that he was in prison for fighting is the only evidence from which the inference might be drawn that he had been convicted. We, therefore, conclude that, while the evidence was competent and should have been admitted, its exclusion did not materially injure or prejudice his case and, consequently, the error should be disregarded under the provisions of section 542 of the Code of Criminal Procedure.

The defendant's counsel claims that he handed to the trial judge twenty-eight written requests to charge during the time

that the assistant district attorney was addressing the jury in his closing argument. They are printed in the case, but the judge states that he had no recollection of receiving the requests and consequently did not make rulings with reference thereto. After the judge had concluded his charge the defendant's counsel took up his copy of the written requests and read therefrom seven of the requests and asked the court to specifically charge them. The court did charge six of the requests so made, and refused the seventh, which we have already considered. The defendant's counsel then made no further request, and asked for no further rulings with reference to the written requests which he claims to have handed to the judge, nor took any exception to the neglect of the court to charge the rest. The jury was then permitted to retire to deliberate upon their verdict. We think, under the circumstances, the defendant's counsel should have asked for rulings upon the other requests, if he desired to raise any question with reference thereto, and by his failure so to do, the court had the right to assume that he had raised all of the questions that he desired to upon the trial. We have, however, examined the remaining requests, and find that they were all substantially disposed of in the main charge of the court, and that, therefore, specific rulings upon them became unimportant.

After the verdict a motion was made for a new trial upon the ground of newly-discovered evidence. The newly-discovered evidence was that of one Antonio Focone, and was to the effect that the defendant while in the city prison had told him, in company with one John Falco, that he was innocent of the crime of killing D'Ambro; that D'Ambro was shot by a man by the name of Joe, who was with him, but that he did not want to tell on Joe; that they had subsequently found Joe, and told him what defendant had said, and that Joe told them that while he and Laudiero were going down Hester street some one fired from a hallway and hit Laudiero in the leg; that when he saw Laudiero

was shot, and that others were around there with their guns out, he pulled his gun and put it near D'Ambro's head and shot him; that as soon as he saw D'Ambro fall he walked away without any one noticing him. Focone also claimed that about two months before the defendant's trial he was informed that this same Joe had killed another man up town, and was a fugitive from justice. The defendant submitted an affidavit corroborating Focone, and stating that he did not tell his counsel before the trial that the shooting was done by the person named Joe. The motion for a new trial was denied, and we think properly.

We have examined the other questions raised by the appellant's counsel, but find no error that calls for a reversal of the judgment.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment of conviction affirmed.